# medi☉stream

| MedioStream, Inc. | 4962 EL CAMINO REAL, STE 201 | 650 625.8900 | info@mediostream.com |
| a new world of sight and sound | LOS ALTOS, CA 94022 | 650 625.9900 fax | www.mediostream.com |

Rick Priddis
Priddis Music
PO Box 345
Pleasant Grove, UT
84062-0345

October 17, 2005

Dear Rick,

Please find enclosed the executed original contract between Priddis and MedioStream. Thank you very much for your help with this project so far, we are really looking forward to working with you in the future and enjoying great mutual success.

Best regards,

*YASHA*

Yasha Spong
Internet Marketing Manager
MedioStream, Inc.

# Agreement Between MedioStream, Inc. and Priddis Music Inc.

This Agreement (the "Agreement") is made with effect from 10 Oct 2005 by and between Priddis Music, Inc. ("Company") and MedioStream, Inc. ("MedioStream").

1. <u>Definitions</u>. For the purposes of this Agreement, the following terms will have the following meanings:
    a. "<u>Affiliate</u>" of any Person means any other person directly or indirectly controlling, controlled by or under common control with such person.
    b. "<u>Available Masters List</u>" will have the meaning set forth in Section 2 of this Agreement
    c. "<u>Bundled Tier</u>" will have the meaning set forth in Section 7 of this Agreement.
    d. "<u>Catalog</u>" will mean Company's active published catalog of commercially released Company Masters in the territory and/or Company Masters provided to Similarly Situated Licensees.
    e. "<u>Claims</u>" will have the meaning set forth in Section 15 of this Agreement.
    f. "<u>Company Artist</u>" means any artist associated with the Company Material.
    g. "<u>Company Master</u>" means a single master karaoke track that is wholly owned and/or controlled by the Company, if and to the extent that Company is able to confer upon MedioStream the authority contemplated by <u>Section 2</u> of this Agreement
    h. "<u>Company Materials</u>" will have the meaning set forth in Section 12(a) of this Agreement.
    i. "<u>Confidential Information</u>" will have the meaning set forth in Section 13 of this Agreement.
    j. "<u>Customer</u>" means any user of the Subscription Service including users only using the Service on a trial basis or through a Bundled Tier, or any purchaser of Permanent Downloads through the MedioStream Store.
    k. "<u>Force Majeure Event</u>" will have the meaning set forth in Section 9 of this Agreement.
    l. "<u>Indemnified Party</u>" will have the meaning set forth in Section 15 of this Agreement.
    m. <u>Indemnifying Party</u>" will have the meaning set forth in Section 15 of this Agreement.
    n. "<u>Limited Download</u>" means the encrypted digital copy that results from the process of downloading in which a Customer's use of or access to is Time Limited. Limited Downloads will also include transmissions from sharing between Customers made as so-called "file sharing", pre-loaded content on a Registered Player or included as a software bundle.
    o. "<u>MedioStream Service</u>" will have the meaning set forth in Section 2 of this Agreement.
    p. "<u>MedioStream Store</u>" will have the meaning set forth in Section 2 of this Agreement.



q. "MedioStream Subscription Service" will have the meaning set forth in Exhibit A attached hereto.
r. "Permanent Download" means a complete digital copy of one or more individual karaoke recordings that are encoded in one of the compression/decompression algorithm compressed formats.
s. "Permanent Download Fee" " will have the meaning set forth in Section 4 of this Agreement.
t. "Person" means any individual, corporation, partnership, limited liability company, trust, association, or other entity or organization.
u. "Proportionate Share" will have the meaning set forth in Section 4(a) of this Agreement.
v. "Registered Player" means a hardware device and its associated software and firmware code that is compatible with the service and is able to respect the usage rules as set forth herein through which a Customer may access Streams and/or Limited Downloads.
w. "Service Fee" will have the meaning set forth in Section 4 of this Agreement.
x. "Similarly Situated Licensees" mean third party services operating in the same country of the Territory that make available on demand Streams, Limited Downloads, or Permanent Downloads of karaoke recordings.
y. "Syndication Partner" will have the meaning set forth in Exhibit D attached hereto.
z. "Stream" means the single, encrypted digital transmission of a karaoke recording, or any part thereof, whereby such transmission is substantially contemporaneous with a public performance and contemporaneous with the Customer being able to see and or hear the karaoke recordings embodied therein, and that does not produce a fixed file embodying such karaoke recording that can be rendered as music without a simultaneous active connection to the Internet other than as temporarily required to render such contemporaneous performance as in the from of a data buffer.
aa. "Tail Period" means the thirty (30) day period following the lapse of a Customer's subscription to the MedioStream Subscription Service. A Customer's subscriptions to the MedioStream Subscription Service will be deemed to lapse on the earlier to occur of either (i) the cancellation by the Customer of his/her subscription or (ii) such Customer's failure to pay any MedioStream Subscription Service fee within forty-five (45) days following the end of the period to which the subscription fee related.
bb. "Term" will have the meaning set forth in Section 9 of this Agreement.
cc. "Territory" will have the meaning set forth in Section 8 of this Agreement.
dd. "Time Limited" means with respect to any Customer that as accessed a Limited Download, such customer may not use or access such Limited Download following the Tail Period.
ee. "Usage Data" will have the meaning set forth in Exhibit E attached hereto.
ff. "Usage Fee" will have the meaning set forth in Section 4 of this



2. <u>License Scope/Grant of Rights.</u>  MedioStream will have the non-exclusive right to encode, host, integrate and make available to Customers of the MedioStream Subscription Service either "on demand" or as part of a "playlist" the Company Masters, and may Stream and/or download the Company masters to Customers.

The downloads may be either Limited Downloads or Permanent Downloads. Additionally, MedioStream will have the right to sell permanent Downloads and make Streams, and on a restricted basis Limited Downloads (as further set forth in Exhibit A) available to Customers within a "MedioStream Store" which will utilize MedioStream platform and/or technology described in Exhibit A.  The MedioStream Store and the MedioStream Subscription Service will be collectively be referred to as the "<u>MedioStream Service</u>".

Company hereby authorizes MedioStream or its Syndication Partners during the Term in the Territory (i) to make necessary copies of the Company Masters and to host such copies for the sole purpose of making Company Masters available to Customers via Streams, Limited Downloads, or Permanent Downloads; and (ii) to digitize the "cover art" of the Company Masters and display such cover art to Customers in connection with the Company masters.  Company will provide all rights necessary for MedioStream to make available Company Materials to Customers in accordance with the Agreement.  MedioStream will secure the publishing rights, including the public performance rights from ASCAP, BMI, and SESAC, required in connection with Limited Downloads and Streaming.  Company will be responsible for securing all other third party rights, permissions and consents required in connection with Limited Downloads and Streaming, and all other rights including the publishing rights for Permanent Downloads.  Any publishing fees from the distribution of Company Masters incurred by MedioStream will be deducted from Company's Service Fee.

Company will use commercially reasonable efforts to make available to MedioStream for the purposes of the MedioStream Service all Company Masters in the catalog. Company will provide MedioStream with a list of Company Masters that may be used as a part of the MedioStream Service in accordance with this Agreement (the "Available Masters List") within thirty (30) days from the date hereof. Notwithstanding the foregoing, simultaneously upon execution hereof, Company will provide an initial list of Company Masters that may be used as part of the MedioStream Service.  During the Term, Company will use all commercially reasonable efforts to make available and designate by delivery of new Available Masters Lists or by other written notice to MedioStream additional Company masters (new releases and Catalog) that MedioStream may offer as part of the MedioStream service.  Company will provide MedioStream with its annual release schedule and any quarterly amendments or changes to this schedule.  The Parties agree that during the Term they will work together in good faith to establish further procedures as may be necessary to identify Company Masters that may be included in the Available Masters List.



3. <u>Marketing and Promotion</u> MedioStream will use commercially reasonable effort to work with Company to market and promote Company Masters across the MedioStream Service.

4. <u>Fee</u>

    a)    With respect to each month of the term, MedioStream shall pay to Company a service fee (the "Service Fee") of company's <u>"Proportionate Share"</u> of 40% of MedioStream Subscription Service's Gross Revenue during such month (such 40% of the MedioStream Subscription Service's Gross Revenue being referred to as the "Gross Revenue Pool"). Gross Revenue shall mean the sum of (i) all revenues actually received by MedioStream (or an agent thereof) and the Syndication partners from Customer Subscriptions in respect of the MedioStream Subscription Service less any bad debt service, actual refunds, actual credit card processing fees and actual credits, (ii)all advertising revenues actually received by MedioStream through Syndication Partners or an agent of MedioStream in respect of the service less any and all direct expenses paid or incurred in connection therewith less (iii) Publishing Fees not to exceed thirteen percent (13%) of the MedioStream Subscription Service Gross Revenue, less (iv) Internet bandwidth costs accrued by MedioStream during the delivery of the Subscription Service. Company's "Proportionate Share" of Gross Revenue with respect to a particular month shall be to equal MedioStream Subscription Service Gross Revenue with respect to such period multiplied by a fraction, the numerator of which shall be the total number of times that any Company Masters available in their entirety (i.e., not Samples) are accessed by Customers of the MedioStream Subscription Service during such month (whether by Stream or by play of a Download for at least thirty (30) seconds), and the denominator of which is the total number of times that all karaoke recordings, including Company Masters, available in their entirety (i.e., not Samples) are accessed by Customers of the MedioStream Subscription Service during such month (whether by Stream or by play of a Limited Download for at least thirty (30) seconds).

    b)    <u>"Usage Fee"</u>. MedioStream will pay company a Usage Fee for plays of Streams and Limited Downloads in excess of thirty (30) seconds in length with respect to the MedioStream Store. The Usage Fee will be equal to the sum of the aggregate number of times the Company Masters was Streamed, or Limited Downloads were played by Customers multiplied by $.002.

    c)    <u>"Permanent Download Fee"</u>. MedioStream will pay Company for each Permanent Download sold in the United States. The Permanent Download Fee for an individual track shall be $0.65 and for a complete album (ten tracks) shall be $6.50. The Permanent Download Fee will be inclusive of



all publishing fees associated with the Permanent Downloads. Pricing for Territories outside of the United States will be determined on a territory-by-territory basis.

5. <u>Payments/Reporting.</u> During the Term, MedioStream will render monthly statements to Company within forty-five (45) days following the end of each calendar month for all sums due together with payment to Company of such sums shown to be due. Company may, upon reasonable notice to MedioStream, at its own expense no more than once during the Term, examine and make extracts of those books and records as they relate to payment of sums due to Company hereunder.

6. <u>Samples and Promotions.</u> Company will provide a free license for MedioStream and its Syndication Partners to provide Company Masters to end users and prospective customers on a trial basis for the sole purpose of promoting the MedioStream Subscription Service. The trial offer will not exceed thirty (30) days. During such thirty (30) day period, MedioStream will not be required to pay Company any fees or other monies in respect of any trial basis users use of or access to the MedioStream Subscription Service.

7. <u>Bundled Tier.</u> MedioStream will have the right to authorize the distribution of the MedioStream Subscription Service as a free to the consumer offer ("Bundled Tier"). Company will be paid its Service Fee in connection with the distribution of the Bundled Tier and the Permanent Download fee for Permanent Downloads sold to Customers.

8. <u>Territory.</u> The Territory will be the world.

9. <u>Term and Termination.</u>

   a) The Term will be three (3) years.

   b) If because of an act of God, inevitable accident, fire, riot or civil commotion, act of public enemy, rule, order or act of any government or governmental instrumentality (whether federal, state, local or foreign) or other cause of a similar or different nature not reasonably with MedioStream or Company's control, as applicable (a <u>"Force Majeure Event"</u>), a party is materially hindered in the performance of its obligations under this Agreement or its normal business operations are delayed or become impossible, then, without limiting the hindered parties rights, the hindered party will have the option, by giving the other party written notice, to suspend it obligations hereunder for the duration of any such contingency provided that such hindered party promptly upon discovery of Force Majeure Event uses its commercially reasonable efforts to recommence performance of the affected obligations or provide an acceptable alternative to such services. No Force Majeure Event will relieve a party of its accounting or payment obligations hereunder, except to the extent and for the duration that an accounting or payment is so hindered or delayed.



c) Either party may terminate this agreement at any time upon written notice to the other party in the event of the occurrence of one or more of the following (i) if a petition under any applicable foreign, state, or United States bankruptcy act, receivership statute, or the like, as it now exists, or as it may be amended, is filed by either party, (ii) if such a petition is filed by any third party, or if an application for a receiver of the other party is made by anyone, and such petition or application is not resolved favorably by the other party within ninety (90) days or (iii) any Force Majeure Event lasts longer than ninety (90) days which hinders the ability of a party to perform its obligations under this Agreement such that the non-performing party would otherwise be in breach of this Agreement; provided, however, non-performing hindered party has after such ninety (90) day period fully resumed, and is in compliance with, its performance requirements hereunder and the non-hindered party has not theretofore exercised its right to terminate this Agreement under Section 9 following such ninetieth (90th) day, then the right to terminate the Agreement by reason of such Force Majeure Event will no longer apply.

d) Subject to Section 19, the non-breaching party may terminate this Agreement at any time upon written notice to the breaching party in the event of a default in the performance of any obligation under this Agreement in any material respect.

e) In the event of expiration or termination of this Agreement, all rights and obligations under this Agreement (other than with respect to Sections 13 and 15, which will continue in effect) will thereafter cease and have no further effect or create any further liability on the part for any prior breach of any representation, warranty, covenant, agreement, or this Agreement.

10. <u>Reporting.</u> MedioStream will provide Company with regular reports regarding the usage of Company Masters on the MedioStream Subscription Service in a manner to be agreed upon. The reports will include the information set forth in Exhibit E. Such information will be owned by MedioStream, provided Company may report such information to its licensors on a need to know basis and for administrative and accounting purposes provided such information is otherwise kept confidential.

11. <u>Removal of Company Masters.</u> Notwithstanding anything in this Agreement to the contrary, Company may elect to withdraw from distribution through the MedioStream Service and Company Material, including, for the purpose of illustration, any associated "cover art", the applicable karaoke recording name, titles, and hyperlinks, but only if and to the extent (i) Company no longer has, or reasonably believes it no longer has, all rights required hereunder to permit the Streaming, Limited Download, or Permanent Downloading of Company Masters or (ii) a claim is asserted against MedioStream or Company alleging a lack of rights to make such material available as part of the MedioStream Service. Company agrees it will not remove Company masters under this Section 11 in a manner that would be discriminatory to MedioStream in relation to Similarly Situated Licensee. Upon receipt of written notice, MedioStream will have thirty (30) days to withdraw such Company masters from distribution through the



MedioStream Service; provided, however, that any Limited Download of Company Masters, downloaded prior to the withdrawal of such Company Masters pursuant to this Section, will cease to be active on the date the license for such content expires.

12. <u>Manner and Use of Company Material.</u> MedioStream will only use Company materials in a manner consistent with and expressly provided by this Agreement.

   a) <u>Ownership of Company Materials.</u> All right, title and interest in and to the Company Masters (including as digitized or otherwise reformatted or copied by MedioStream), and any marks or other materials, including all copyrights, trademarks, trade names, patents, and other proprietary or intellectual property rights inherent therein (collectively, the "<u>Company Materials</u>") are owned and retained exclusively by Company and its applicable affiliates and their licensors and all goodwill associated with MedioStreams use of the Company Materials will inure solely to the benefit of the Company and it applicable Affiliates. Not withstanding anything to the contrary expressly provided for herein, MedioStream will exclusively own the tangible and personal property rights (as distinguished form the intellectual property rights) in and to the digitized and/or encoded files produced by MedioStream at its expense hereunder, and MedioStream will have no obligation at any time during the Term or thereafter to deliver same or copies thereof to Company or allow Company to make copies thereof; provided, however, that upon expiration or other termination of the Term, the provisions of Section 9 above will apply to such files.

   b) <u>Ownership of MedioStream Service.</u> As between MedioStream and Company, MedioStream owns all rights, title and interest in and to the MedioStream Service and usage Data, including all copyright and other intellectual property rights in and to all elements and components related thereto, and to all goodwill associated with the MedioStream Service will inure solely to the benefit of MedioStream. Company understands and agrees that it will not acquire any right, title, or interest in or to the MedioStream Service, or any part thereof, by reason of this Agreement or the performance thereof. All rights not specifically granted herein with respect to the MedioStream Service are reserved to MedioStream. Company will not contest, or assist other non-affiliated parties in contesting, MedioStream's rights and interests in the MedioStream Service or Usage Data or the validity of such ownership (including all copyright and other intellectual property rights in and to all elements and components related thereto).

13. <u>Confidentiality.</u> Neither Company, nor MedioStream (nor any Affiliate of the foregoing) will disclose or reveal to any person or entity the terms and conditions of this agreement or any Confidential Information (as defined herein), except as required by governmental proceeding, applicable law or court order. Either party may disclose Confidential Information to its advisors, attorneys under privilege, ands its employees or agents on a "need to know" basis. Upon termination or expiration of this Agreement each party will promptly return all Confidential Information of the other party and all copies thereof, if any. The Parties obligations set forth in this section 13 will survive any



expiration or termination of the Term. In the event that either party or its Affiliates is required by law to disclose any such Confidential Information, such party will notify the other party in writing so that the other party may seek a protective order and/or other motion to prevent or limit the production or disclosure of such information. If such motion has been denied or is pending and unresolved at the time of the disclosure of such information as is required by law, then the party required to disclose such information may disclose only such portion of such information which (A) based on the advice of such party's outside legal counsel, is required by law to be disclosed (such disclosing party using all best efforts to preserve the confidentiality of the remainder of such information) or (B) the other party consents in writing to having disclosed.

"Confidential Information" means (i) all non-public information of a party and its affiliates, including information relating to the service and pertaining to such party's business strategy, activities and operations (whether as then being conducted or proposed to be conducted), reports, ideas, concepts, techniques, technology, designs, specifications, drawings, diagrams, data, code, marketing plans, suppliers, usage data, customer lists, financial information, employees, trade secrets, and other technical or business information and any information, data or reports prepare or compiled under this Agreement and (ii) the terms of this Agreement. Confidential information will not be deemed to include any information (a) is publicly known at the time of the disclosure; (b) becomes publicly known other than by breach of the terms of this agreement; (c) becomes known to the disclosing party, without restriction, from a source free of any obligation of confidentiality and without breach of this section 13; or (d) is independently developed by the disclosing party.

14. Representations and Warranties.

   a) Company represents and warrants that:
       i. Company has the right and power to enter into and fully perform all of its obligations under this agreement.
       ii. Company has the right to provide MedioStream with the right to utilize the Company Materials provided that the Company Materials are utilized by MedioStream solely in the manner and for such purposes as expressly provided herein; and MedioStream's use of the Company Materials as provided herein will not infringe on any third party copyright, trademark, patent, trade secret or other third party proprietary, intellectual property or contractual right.
       iii. Company will comply withal applicable laws in the performance of its obligations hereunder.
       iv. No agreement of any kind heretofore entered by Company will interfere in any manner with the complete performance buy Company of this Agreement
       v. Company is a corporation duly organized, validly existing and in good standing under the laws of the state of Nevada.



b) MedioStream represents and warrants that:
    i. MedioStream has the right and power to enter into and fully perform all its obligations under this Agreement;
    ii. MedioStream will comply withal applicable laws in the performance of its obligations hereunder.
    iii. MedioStream is a corporation duly organized, validly existing and in good standing under the laws of the state of California
    iv. MedioStream will use commercially reasonable efforts to ensure that the MedioStream Service will comply at all times during the Term with the descriptions set forth in this Agreement.
    v. No agreement of any kind heretofore entered by MedioStream will interfere in any manner with the complete performance buy MedioStream of this Agreement
    vi. Notwithstanding any other provision hereof, MedioStream does not warrant or guarantee that the MedioStream Service will be uninterrupted or error free or that the MedioStream Service will prevent all circumvention attempts or security breaches. MedioStream disclaims any warranty not expressly set forth herein, and disclaims any express or implied warranty of merchantability or fitness for a particular purpose.

15. Indemnification.

    a) Mutual Indemnification. Each party (an "Indemnifying Party") will indemnify, defend and hold harmless the other party, its parents, subsidiaries, Affiliates, and their respective directors, officers, employees and agents (an "Indemnified Party"), with respect to any claim, demand, cause of action, or debt or liability brought by or claimed by any third party, including reasonable outside attorneys fees (collectively, "Claims"), to the extent that any such Claim is based upon or arises out of a breach of any of the Indemnifying Party's representations, warranties, covenants or obligations hereunder. The foregoing indemnity will be applicable only to such claims as have been reduced to a final judgment or settled with the consent of the Indemnifying Party (such consent not to be unreasonably withheld or delayed).
    b) Indemnification Notice. In claiming any indemnification hereunder, the Indemnified Party will promptly provide the Indemnifying Party with written notice of any claim which the then Indemnified Party believes falls within the scope of this Section 15
    c) Limitations of Damages. Under no circumstances and under no legal theory, whether in tort, contract or otherwise, including this Section 15, will either party be liable to the other party for any indirect, special, incidental, punitive or consequential damages of any character including damages for loss of goodwill, loss of anticipated profits, computer failure, even if the party has been informed of the possibility of such damages. No warranty, condition, undertaking or term, express or implied, statutory or otherwise, as to the condition, quality, durability, performance, merchantability or fitness for a particular purpose of any products,



services or other items furnished under this Agreement is given or should be assumed by either party and all such warranties are hereby excluded.

16. <u>Publicity.</u> Any press release or other public announcements made by or for or on behalf of either party concerning this agreement will require the prior approval of Company and MedioStream, which neither party will unreasonably withhold or delay.

17. <u>No Agency or Joint Venture.</u> The Parties agree and acknowledge that the relationship of the Parties is in the nature of independent contractors. This Agreement will not be deemed to create a partnership or joint venture, and neither party is the other's agent, partner, employee, or representative.

18. <u>Entire Agreement</u>. This Agreement, including the Exhibits hereto which are incorporated herein, constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all proposals, oral or written, and all negotiations, conversations, discussions, previous distribution or value added reseller agreements heretofore between the parties. Company hereby acknowledges that it has not been induced to enter into this Agreement by any representations or statements, oral or written, not expressly contained herein.

19. <u>Amendment</u>. This Agreement may not be modified, amended, rescinded, canceled or waived, in whole or in part, except by written amendment signed by both parties hereto.

20. <u>Assignment</u>. Neither party shall have the right to assign or otherwise transfer its rights and obligations under this Agreement except with the prior written consent of the other party; provided, however, that either party may assign any or all of its rights and obligations hereunder to any of its subsidiaries, provided that the assigning party shall remain fully liable for the performance of all its obligations hereunder; and further provided that a successor in interest by merger, by operation of law, assignment, purchase or otherwise of all or substantially all the business of MedioStream may acquire its rights and obligations hereunder. Any prohibited assignment shall be null and void

21. <u>Notices</u>. Notices permitted or required to be given hereunder shall be deemed sufficient if given by registered or certified mail, postage prepaid, return receipt requested, by private courier service, or by facsimile addressed to the respective addresses of the parties as first above written or at such other addresses as the respective parties may designate by like notice from time to time. Notices so given shall be effective upon (a) receipt by the party to which notice is given, or (b) on the fifth (5th) day following domestic mailing or the tenth (10th) day following international mailing, as may be the case, whichever occurs first.



If to Company:

Priddis Music Inc
Attn: Rick Priddis
PO Box 345
Pleasant Grove, UT 84062
Ph: 801-785-0949
Fx: 801-785-6705


If to MedioStream:

MedioStream, Inc.
4962 El Camino Real, Suite 201
Los Altos, CA 94022
ph: 650-625-8900
fx: 650-625-9900

22. <u>Governing Law</u>.  This Agreement shall be governed by and interpreted under the laws of the State of California, U.S.A

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives below.

| **MedioStream, Inc.** | **Company:** |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Cheng C. Kao | Name: Richard Priddis |
| Title: President | Title: President |

# EXHIBIT A

## MedioStream Subscription Service Specifications

1. <u>Service Specifications:</u>
    a. The first release of the MedioStream Client will only have streaming capability. Limited Download and Permanent Download capability may be included in a future version.
    b. MedioStream's client is a closed system. This means that only content licensed form labels or authorized third parties and distributed by MedioStream can be Streamed. All Streamed Company Masters will originate from MedioStream. MedioStream will make Streams available to Customers in "good standing" (described in Exhibit C). Customers may playback Streams of Company Masters on their local PC on demand.
    c. A DRM (Described in Exhibit B) will be used for securing Company Masters.
    d. The search component of the MedioStream Client allows customers to search the entire MedioStream content archive and locate songs by title, genre, popularity, and date.

2. <u>Subscription Specifications</u>
    a. Paid monthly (30 days) subscriptions. Customer status will be checked every 30 days to validate access to Streams.
    b. 7 days following the lapse of a Customers Subscription all access to Streams will be suspended.
    c. Customers must purchase a User Name and Password to access the content stored on the MedioStream servers. This User Name and Password must be invoked at the beginning of every user session.
    d. The Parties acknowledge that the Service may carry promotional windows, banners and links carrying HTML and other Internet content.
    e. The Parties acknowledge that MedioStream will have sole ownership and control of these promotional windows and their content, with the sole exception of the Company Masters.

## EXHIBIT B

## Digital Rights Management (DRM) Regime

1. <u>DRM Overview</u>
    a. MedioStream will deploy the Microsoft Windows Media Format (9 series and version 9.5) Digital Rights Management system in the Subscription Service Client and Server software.
    b. MedioStream will wrap all Company Masters in the DRM before making them available for Streams.
    c. If any breach of the DRM occurs, MedioStream will make all commercially reasonable efforts to repair and secure all Company Masters.
    d. The Customers subscription will need to be validated by the DRM every 30 days. Customers that fail validation will be excluded by the DRM from accessing Streams.
    e. MedioStream will deploy the Company Masters in Windows Media 9 format so as to make best use of the Microsoft DRM capabilities.



## EXHIBIT C

## MedioStream Technical Specifications

1. <u>Network Architecture and Capacity:</u>  MedioStream will subcontract its server and bandwidth services from a vendor of its chosing.  This vendor will provide Stream reporting, and the application level DRM described in Exhibit B.

# EXHIBIT D

## Syndication Model

1. MedioStream intends to find Syndication Partners such as web portals, karaoke retailers, and others who cater to the karaoke market.

2. Any Person will be acceptable to Company as a Syndication Partner so long as such Person can satisfy, and continues to satisfy the following criteria.
   a) Such Person will be able to comply with the Terms setout in this Agreement, including Fees and Territories.

3. MedioStream will obligate all Syndication partners in writing to abide by the same rules and standards as MedioStream with regards to the usage of the Licensed Content. Without limiting the foregoing:

   - Syndication Partners users who subscribe for the Service will become MedioStream Customers; provided, however, Syndication partners may provide Customer billing and collection services of behalf of MedioStream.

   - Syndication Partners may market and promote the service to their users.



## EXHIBIT E

### Royalty Reporting

MedioStream agrees to provide reports including the following "Usage Data".

- Karaoke recording title
- International Standard Recording Code (IRSC)
- Number times Streamed
- Calculation of net receipts
- Summary report in hard copy

If MedioStream cannot provide the IRSC, Company will provide MedioStream with a unique karaoke recording number for future royalty reporting.

Rick Priddis
Priddis Music
P.O. Box 345
Pleasant Grove, UT
84062-0345

Attention: Mr. Rick Priddis

December 13, 2005

This letter is to serve as an amendment to the agreement between MedioStream Inc. and Priddis Music dated October 10, 2005.

Presently, MedioStream Inc. does not intend to offer work from the Priddis Music catalogue as a "Permanent Download". At this time, the MedioStream service is limited to streaming only and has no download component.

In future, if MedioStream Inc. wishes to offer permanent download of works from the Priddis catalogue, MedioStream will seek permission from Priddis at that time.

MedioStream will not offer any work from the Priddis Music catalogue for permanent download without the express written permission of Priddis Music.


FOR MEDIOSTREAM INC.                        FOR PRIDDIS MUSIC

Name: *Cheng C. Kao*                        Name: _____
Signature: *Cheng C. Kao*                   Signature: _____
Title: *President*                          Title: _____
*12/13/05*


**MedioStream Inc. 4962 El Camino Real Suite 201 Los Altos, CA 94022**

Rick Priddis
Priddis Music
P.O. Box 345
Pleasant Grove, UT
84062-0345

Attention: Mr. Rick Priddis

December 13, 2005

This letter is to serve as an amendment to the agreement between MedioStream Inc. and Priddis Music dated October 10, 2005.

Presently, MedioStream Inc. does not intend to offer work from the Priddis Music catalogue as a "Permanent Download". At this time, the MedioStream service is limited to streaming only and has no download component.

In future, if MedioStream Inc. wishes to offer permanent download of works from the Priddis catalogue, MedioStream will seek permission from Priddis at that time.

MedioStream will not offer any work from the Priddis Music catalogue for permanent download without the express written permission of Priddis Music.

| FOR MEDIOSTREAM INC. | FOR PRIDDIS MUSIC |
|---|---|
| Name: *Cheng C. Kao* | Name: *Richard Priddis* |
| Signature: *Cheng C. Kao* | Signature: *[signed]* |
| Title: *President* | Title: *President* |
| 12/13/05 | 1/3/06 |

MedioStream Inc. 4962 El Camino Real Suite 201 Los Altos, CA 94022