1   MARC E. MAYER (SBN 190969), mem@msk.com
    MITCHELL SILBERBERG & KNUPP LLP
2   11377 West Olympic Boulevard
    Los Angeles, California 90064-1683
3   Telephone: (310) 312-2000
    Facsimile: (310) 312-3100
4
    Attorneys for Defendants Warner/Chappell Music, Inc.
5   Word Music, LLC, Dayspring Music, LLC, Wordspring Music,
    LLC, Unichappell Music, Inc., Chappell & Co., Inc., Cotillion
6   Music, Inc., Rightsong Music, Inc., Walden Music, Inc.,
    Warner/Tamerlane Publishing Corp., and WB Music Corp.
7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  MEDIOSTREAM, INC.,                    CASE NO. C 07 2127

12          Plaintiff,                    **NOTICE OF MOTION AND MOTION OF
                                          THE WARNER PUBLISHERS TO
13      v.                                DISMISS AMENDED COMPLAINT OR,
                                          ALTERNATIVELY, TO TRANSFER OR
14  PRIDDIS MUSIC, INC. AND               STAY THE ACTION**
    WARNER/CHAPPELL MUSIC, INC., et al.,
15                                        **MEMORANDUM OF POINTS AND
            Defendants.                   AUTHORITIES AND DECLARATIONS
16                                        OF PAUL H. STACEY AND KELLY L.
                                          ISENBERG IN SUPPORT**
17
                                          [Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1404]
18
                                          Date:   September 19, 2007
19                                        Time:   9:00 a.m.
                                          Ctrm:   3, 17th Floor
20

21      **TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

22

23      **PLEASE TAKE NOTICE** that, on September 19, 2007, in the courtroom of The

24  Honorable Phyllis J. Hamilton of the United States District Court for the Northern District of

25  California, 450 Golden Gate Avenue, San Francisco, California, 94102, at 9:00 a.m. or as soon

26  thereafter as the matter may be heard, Defendants Warner/Chappell Music, Inc., Word Music,

27  LLC, Dayspring Music, LLC, Wordspring Music, LLC, Unichappell Music, Inc., Chappell & Co.,

28  Inc., Cotillion Music, Inc., Rightsong Music, Inc., Walden Music, Inc., Warner/Tamerlane

Mitchell
Silberberg &
Knupp LLP

1481087.1

                                        CASE NO. C 07 2127
            NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

Dockets.Justia.com

1   Publishing Corp., and WB Music Corp. (the "Warner Publishers") shall, and hereby do, move the

2   Court pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1404, and the Court's

3   inherent authority, to dismiss this action, or alternatively to transfer the action to the United States

4   District Court for the Middle District of Tennessee or to stay the action pending the resolution of a

5   related, parallel action in the Middle District of Tennessee, Word Music LLC et. al. v. Priddis

6   Music, Inc. et. al., Case No. 3:07-0502 (M.D. Tenn.) (the "Nashville Action"), which was filed on

7   May 8, 2007.

8

9       This Motion is made on the following grounds:

10

11      (1)     This action is subject to dismissal or transfer in deference to the parallel Nashville

12  Action. In the Nashville Action, the Warner Publishers (with the exception of Warner/Chappell

13  Music, Inc., which does not own any of the copyrights at issue) have asserted claims for copyright

14  infringement against Mediostream, Inc. and others, including co-defendant Priddis Music, Inc.

15  ("Priddis") and various related companies. In this action, Mediostream seeks merely a declaration

16  of non-infringement of the Warner Publishers' copyrights. Thus, it is the mirror image of the

17  Nashville Action, but this action does not contain all of the parties to or claims asserted in the

18  Nashville Action. Proceedings in Tennessee have proceeded much further than proceedings in this

19  Court. Considerations of efficiency, equity, and wise judicial administration mandate dismissal.

20

21      (2)     The surrounding facts, including the timing of the filing of this action and the

22  course of dealings between the parties, lead to the inescapable conclusion that this action was filed

23  in a "race to the courthouse" and in an effort to preempt the Warner Publishers' parallel

24  affirmative lawsuit. Further, this action was filed after Mediostream deliberately, and in bad faith,

25  purported to engage the Warner Publishers in discussions concerning its acceptance of a Waiver of

26  Service – knowing that such discussions would delay the filing of the Warner Publishers' lawsuit

27  while it prepared and filed its own anticipatory complaint for "Declaratory Judgment."

28

Mitchell
Silberberg &
Knupp LLP

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

(3)    Alternatively, this action should be transferred to the United States District Court for the Middle District of Tennessee, pursuant to 28 U.S.C. § 1404, in the interests of justice and for the convenience of the parties.  In light of the fact that Mediostream has appeared in the Nashville Action and that the case is proceeding apace in Middle District of Tennessee, interests in judicial economy and efficiency, as well as in avoiding inconsistent rulings, mandate that this action be heard by that Court.  Additionally, none of the "private" or "public" "convenience" factors justify upsetting the Warner Publishers' choice of forum as a copyright plaintiff.  To the contrary, all of these considerations support transfer of this action to the Middle District of Tennessee, to be consolidated with the Nashville Action.

(4)    At a minimum, in the event the Court elects not to dismiss or transfer this action, the Court, in the exercise of its discretion, should stay this action pending the resolution of the Nashville Action.  Such a stay would further interests of judicial economy and efficiency and is necessary to avoid the risk of inconsistent district court (and/or appellate court) rulings.  See Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Paul Harrison Stacey and Kelly Isenberg, all pleadings and papers on file in this action, any facts of which the Court may take judicial notice, and any oral argument that the Court may entertain.

DATED: August 3, 2007                                    MARC E. MAYER
                                                        MITCHELL SILBERBERG & KNUPP LLP


                                                        By: /s/ Marc E. Mayer
                                                            Marc E. Mayer
                                                            Attorneys for Defendants

Mitchell
Silberberg &
Knupp LLP

1481087.1

# TABLE OF CONTENTS

**Page(s)**

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY.....................................3

II.     THE ACTION SHOULD BE DISMISSED AS AN ANTICIPATORY
        LAWSUIT OR OTHERWISE IN DEFERENCE TO THE WARNER
        PUBLISHERS' PARALLEL NASHVILLE ACTION. ...................................................6

III.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION
        TO THE MIDDLE DISTRICT OF TENNESSEE...........................................................11

        A.      The Related Nashville Action Alone Mandates Transfer of This
                Action. ..............................................................................................................13

        B.      Mediostream Cannot Meet Its Burden Of Proving That Any Other
                Public or Private "Convenience" Factors Justify Retention Of This
                Action; To The Contrary, All Favor Transfer To The Middle District
                Of Tennessee....................................................................................................14

Conclusion ................................................................................................................................17

Mitchell
Silberberg &
Knupp LLP

1481087.1

i                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

## CASES

ABKCO Music, Inc. v. Stellar Records, Inc.,
    96 F.3d 60 (2d Cir. 1996)..............................................................................4

Amerada Petroleum Corp. v. Marshall,
    381 F.2d 661 (5th Cir. 1967)........................................................................8

AmSouth Bank v. Dale,
    386 F.3d 763 (6th Cir. 2004)........................................................................7

Baird v. California Facility Ass'n,
    Case No. C-00-0628-0628-VRW,
    2000 WL 516378 (N.D. Cal. 2000) .............................................................13

BASF Corp. v. Symington,
    50 F.3d 555 (8th Cir. 1995).....................................................................7, 12

Board of Trustees v. Elite Erectors, Inc.,
    212 F.3d 1031 (7th Cir. 2000)....................................................................16

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)....................................................................................15

Capital Venture Int'l v. Network Commerce, Inc.,
    Case No. 01-Civ. 4390 (JSM),
    2002 WL 417246 (S.D.N.Y. March 15, 2002)...........................................13

Charles Schwab & Co., Inc. v. Duffy,
    Case No. C98-03612,
    1998 WL 879659 (N.D. Cal. Dec. 8, 1998)............................................9, 10

Chicago Ins. Co. v. Holzer,
    Case No. 00 Civ. 1062,
    2000 WL 777907 (S.D.N.Y. June 16, 2000)...............................................10

Columbia Pictures Indus., Inc. v. Schneider,
    435 F. Supp. 742 (S.D.N.Y. 1977) ...............................................................9

Columbia Pictures Television v. Krypton Broadcasting of Birmingham,
    106 F.3d 284 (9th Cir. 1997)......................................................................12

Commercial Union Insur. Co. v. Cannelton Indus., Inc.,
    828 F. Supp. 504 (W.D. Mich. 1993) .........................................................17

Continental Grain Co. v. Barge FBL-585,
    364 U.S. 19 (1959) ......................................................................................13

Mitchell
Silberberg &
Knupp LLP

1481087.1

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4

*Davox Corp. v. Digital Sys. Int'l, Inc.,*
846 F. Supp. 144 (D. Mass. 1993)..................................................................9

5

*E.E.O.C. v. University of Tennessee,*
850 F.2d 969 (3d Cir. 1988).........................................................................9

6

7

*Endless Pools, Inc. v. Wave Tec Pools, Inc.,*
362 F.Supp.2d 578 (E.D. Pa. 2005)............................................................15

8

*Factors, Etc. v. Pro Arts, Inc.,*
579 F.2d 215 (2d Cir. 1989)..................................................................8, 10

9

10

*Gardipee v. Petroleum Helicopters, Inc.,*
49 F. Supp. 2d 929 (E.D. Tex. 1999)..........................................................17

11

12

*Great Am. Ins.v. Houston General Ins. Co.,*
735 F. Supp. 581 (S.D. N.Y. 1990) ............................................................11

13

*Gribin v. Hammer Galleries,*
793 F. Supp. 233 (C.D. Cal. 1992) ..............................................................8

14

15

*Hanson PLC v. Metro-Goldwyn-Mayer, Inc.,*
932 F. Supp. 104 (S.D.N.Y. 1996) .............................................................10

16

17

*Hyatt Int'l Corp. v. Coco,*
302 F.3d 707 (7th Cir. 2002).......................................................................7

18

*In re Eastern District Repetitive Stress Injury Litigation,*
850 F. Supp. 188 (S.D.N.Y. 1994) .............................................................15

19

20

*Int'l Ass'n of Entrepreneurs v. Angoff,*
58 F.3d 1266 (8th Cir. 1995).......................................................................8

21

22

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir.2000).................................................................12, 15

23

*Keppen v. Burlington N. R.R.,*
749 F.Supp. 181 (N.D. Ill. 1990)................................................................13

24

25

*Kerotest Mfg. Co. vs. C-O-Two Fire Equip. Co.,*
342 U.S. 180, 185. (1952)...........................................................................6

26

27

*Lawrence County, South Dakota v. State of South Dakota,*
668 F.3d 27 (D. Mass 1996).......................................................................12

28

Mitchell
Silberberg &
Knupp LLP

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1

<u>**TABLE OF AUTHORITIES**</u>
<u>(continued)</u>

2

3

<u>**Page(s)**</u>

4
Lonza, Inc. v. Rohm & Haas, Inc.,
    951 F. Supp. 46 (S.D.N.Y. 1997) ................................................................11

5
Mailer v. Zolotow,
    380 F. Supp. 894 (S.D.N.Y. 1974) ...............................................................9

6

7
Martin-Trigona v. Meister,
    668 F. Supp. 1 (D.D.C. 1987) .....................................................................13

8
Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003) .......................................................17

9

10
Miss America Organization v. Mattel, Inc.,
    945 F.2d 536 (2d Cir. 1991) ..................................................................3, 15

11

12
Mission Ins. Co. v. Puritan Fashions Corp.,
    706 F.2d 599 (5th Cir. 1983) ......................................................................10

13
Mohamed v. Mazda Motor Corp.,
    90 F. Supp. 2d 757 (E.D. Tex. 2000) ..........................................................16

14

15
Muller v. Walt Disney Corp.,
    822 F. Supp. 1033 (S.D.N.Y. 1993) ...........................................................10

16

17
NGS Am., Inc. v. Jefferson,,
    218 F.3d 519, 523 (6th Cir.2000) .................................................................7

18
NSI Corp. v. Showco, Inc.,
    843 F. Supp. 642 (D. Or. 1994) ....................................................................9

19

20
Piper Aircraft Co., v. Reyno,
    454 U.S. 235 (1981)....................................................................................12

21

22
Savin v. CSX Corp.,
    657 F. Supp. 1210 (S.D.N.Y. 1997) ...........................................................13

23
Smithkline Corp. v. Sterling Drug, Inc.,
    406 F.Supp. 52 (D. Del. 1975) ...................................................................16

24

25
Stewart Organization Inc. v. Ricoh Corp.,
    487 U.S. 22 (1988) .....................................................................................12

26

27
Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,
    819 F.2d 746 (7th Cir. 1987)........................................................................7

28

Mitchell
Silberberg &
Knupp LLP

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

UAW v. Dana Corp.,
    No. 3:99CV7603,
    1999 WL 33237054 (N.D. Ohio, Dec. 6, 1999)................................................................7

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995)......................................................................................................17

Word Music, LLC et al. v. Priddis Music et al.,
    Case No. 3:07-0502 (M.D. Tenn.) (the "Nashville Action") ....................................passim

Z-Line Designs, Inc. v. Bell'O International LLC,
    218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................8, 9, 10


**STATUTES**

28 U.S.C.
    § 1400(a) ......................................................................................................................12
    § 1404(a) ....................................................................................................11, 12, 13

Copyright Act
    § 501 ........................................................................................................................3, 15
    § 505 ............................................................................................................................6


**RULES**

Rule 26(a) ..............................................................................................................6, 16


**OTHER AUTHORITIES**

C. Wright & A. Miller, Federal Practice & Procedure
    § 2758 (2d ed. 1983 & Supp. 1991) ............................................................................8

Mitchell
Silberberg &
Knupp LLP

1481087.1

v

CASE NO. C 07 2127

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

This action for purported declaratory relief and "indemnification" is an anticipatory lawsuit which was filed solely in an attempt to wrest the choice of venue from the proper plaintiffs in their copyright infringement dispute. The "Defendants" in this action – various Warner-affiliated music publishing entities, namely Warner/Chappell Music, Inc. ("WCM")[1], Word Music, LLC, Dayspring Music, LLC, Wordspring Music, LLC, Unichappell Music, Inc., Chappell & Co., Inc., Cotillion Music, Inc., Rightsong Music, Inc., Walden Music, Inc., Warner/Tamerlane Publishing Corp., and WB Music Corp. (the "Warner Publishers") – are the owners of copyrights or exclusive rights under copyright in thousands of well-known musical compositions, and are the ***rightful*** parties to bring an action based upon infringement of those copyrights. The Plaintiff herein, Mediostream, Inc. ("Mediostream") is among six Defendants against whom the Warner Publishers have instituted suit in the United States District Court for the Middle District of Tennessee, <u>Word Music, LLC et al. v. Priddis Music et al.</u>, Case No. 3:07-0502 (M.D. Tenn.) (the "Nashville Action") for copyright infringement.

The Nashville Action was filed on May 8, 2007. In the Nashville Action, the Warner Publishers have alleged that Mediostream infringed their copyrights by engaging in the unauthorized manufacture, distribution, advertising and sale of various "karaoke" products incorporating in whole or in part the Warner Publishers' copyrighted musical compositions. Mediostream has filed an Answer and has appeared in the Nashville Action, and the District Court in the Middle District of Tennessee already has held a case management conference, issued a preliminary injunction, and has before it additional requests for injunctive relief. This *ersatz* declaratory judgment action filed by Mediostream is a mirror image of the Nashville Action, but seeks only a declaration that "to the extent" Mediostream has infringed the Warner Publishers'

---

[1] Warner/Chappell Music, Inc. ("WCM") while named as a Defendant herein, in fact has no ownership/administration interest in any of the music copyrights at issue in the Nashville Action. Isenberg Decl., ¶ 3.

Mitchell
Silberberg &
Knupp LLP

1481087.1

1                                                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  copyrights, its infringement was "innocent and in ignorance of Warner's rights." (Mediostream

2  does not contend that any of the musical compositions it manufactured and sold were licensed by

3  the Warner Publishers).  But unlike the Nashville Action, this action does not include all of the

4  relevant issues or parties, does not seek to provide the same or proper relief to which copyright

5  owners are entitled, does not seek a declaration of rights regarding *future* conduct, and was

6  instituted purely as a "race to the courthouse" tactic to deprive the Warner Publishers of their

7  proper forum.

8        Dismissal is warranted because this action was filed in anticipation of the Warner

9  Publishers imminent copyright infringement action, seeks solely a declaratory judgment for

10 noninfringement (and not to redress any substantive rights), and is, at best, duplicative of the

11 Nashville Action.  Indeed, Mediostream admits in its Complaint that the action was filed in

12 response to the Warner Publishers' demand letter and in an effort to preempt a lawsuit:  "On or

13 about February 13, 2007, plaintiff was contacted by Paul Harrison Stacey, attorney for defendant

14 Warner asserting that plaintiff was infringing upon his client's copyrights."  Complaint, ¶ 2.  In an

15 effort to stall the Warner Publishers (and preempt the filing of Warner's affirmative infringement

16 action), Mediostream, through its attorney (Frear Stephen Schmid), purported to have ceased the

17 alleged infringement.  But when doubts emerged as to whether this in fact was the case – thus

18 prompting the Warner Publishers' counsel to inquire as to whether Mediostream's counsel would

19 accept service of a Complaint -- Mediostream hastily filed its complaint in this action (naming the

20 wrong party), well aware that the Nashville Action was about to be filed.

21       In the event this Court declines to dismiss the action outright, transfer alternatively is

22 warranted in the interests of judicial economy and efficiency.  The Middle District of Tennessee is

23 intimately familiar with the issues and facts to be litigated, and the Nashville Action is proceeding

24 apace.  If this action were to proceed here while a related (indeed, identical) action is litigated in

25 Tennessee, there is a real and substantial risk of conflicting and inconsistent rulings on the same

26 issues, resulting in confusion and uncertainty among the parties and in the industry as a whole.

27 None of the other "public" or "private" interest factors warrants disruption of the Warner

28 Publishers' presumptive choice of forum for its infringement claims.  Rather, each of these factors

Mitchell
Silberberg &
Knupp LLP

1481087.1

2                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  supports transfer of this action to the Middle District of Tennessee or, at best, is neutral.  As for

2  any affirmative defenses, counterclaims, or cross-claims that Mediostream may have against the

3  Warner Publishers or Priddis, those can (and should) properly be brought as part of the Nashville

4  Action – not as a separate, independent claim for declaratory relief.[2]

5          As the true and proper Plaintiffs in an infringement action, the Warner Publishers – not

6  Mediostream – are entitled to select the forum to bring their substantive tort claims.  See Miss

7  America Organization v. Mattel, Inc., 945 F.2d 536, 543 (2d Cir. 1991) (Section 501 of the

8  Copyright Act grants "the copyright holder its choice of forum and express[es] a policy of giving

9  the holder an advantage over the alleged infringer").  To allow this action to proceed in lieu of the

10  pending Nashville Action would unfairly reward Mediostream's procedural fencing, discourage

11  parties from engaging in pre-litigation discussions, and ultimately run counter to compelling

12  interests of judicial economy and efficiency.  Accordingly, this action should be dismissed,

13  transferred to the Middle District of Tennessee, or stayed pending the outcome of the related

14  Nashville Action.

15

16  I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

17

18          The Parties.  The Warner Publishers (with the exception of WCM) are music publishers

19  that own or control the copyrights or exclusive rights under copyright in thousands of well known

20  and popular musical compositions.  Isenberg Decl., ¶ 2.  Mediostream (along with others,

21  including Priddis) is a company engaged in the sale of "karaoke" recordings.  Mediostream has

22  infringed the Warner Defendants' copyrights or exclusive rights under copyright by recording,

23  reproducing, distributing, marketing, advertising, "sampling" and selling the Warner Publishers'

24  _____

25  [2]  On July 16, 2007, Priddis filed an answer to Mediostream's Complaint, as well as a
    Counterclaim against Mediostream.  These claims should transferred along with the claims against

26  the Warner Publishers.  Alternatively, if the claims against the Warner Publishers are dismissed,
    Priddis and Mediostream may either continue to litigate their claims in this forum or litigate them

27  in Nashville.  In either event, because the claims and counterclaims between Mediostream and
    Priddis do not involve the Warner Defendants, they should not impact dismissal or transfer of the

28  claims against the Warner Publishers.

Mitchell
Silberberg &
Knupp LLP

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

musical compositions without their authorization in its "karaoke" recordings.[3]  (Stacey Decl., ¶ 1 and Exhibit A thereto [Complaint, p. 7,¶ 24]; Isenberg Decl., ¶ 7).  See ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 62 (2d Cir. 1996) (creation of unlicensed karaoke recordings infringes the rights of a copyright owner in musical compositions).

Warner/Chappell Music, Inc. ("WCM") is a company that is affiliated with the Warner Publishers, but does not itself own or control any of the copyrights at issue in this lawsuit (or the Nashville Action).  Isenberg Decl., ¶ 2.

**The Demand Letter.**  On or about January 26, 2007, counsel for the Warner Publishers sent a cease and desist letter to a number of "karaoke" manufacturers, including Mediostream (and/or their attorneys or registered agents) alleging that they had infringed hundreds of music copyrights owned and/or administered in whole or in part by the Warner Publishers by replicating them and their printed lyrics "in various Karaoke musical products including, but not necessarily limited to, CDG, CD+G, DVD and internet downloaded recordings."  (Stacey Declaration, ¶ 2, Exhibit B thereto).  Immediately thereafter, the recipients of the cease and desist letter, Mediostream and Priddis in particular, notified the Warner Defendants that they had ceased their infringing activities.  (Stacey Declaration, ¶ 3, Exhibit C thereto).[4]

**The Anticipatory California Action.**  During the ensuing weeks, Mediostream was fully communicative with the Warner Defendants' counsel and at that time at least appeared to comply with the Warner Publishers' cease and desist demand, including by dismantling its website. (Stacey Declaration, ¶ 3.)  Nevertheless, in late March or early April 2007, the Warner Publishers

---

[3]  "Karaoke," a Japanese word meaning "empty orchestra," is a hybrid audio and audiovisual work that enables the contemporaneous video display of a song's lyrics while the song is playing so that the audience may perform the song.  ABKCO, 96 F.3d at 62.

[4]  While discussions ensued between Mediostream, the Miller Defendants and the Warner Defendants' counsel, the Priddis Defendants (apart from two brief items of faxed correspondence which are attached to the Stacey Supp. Decl. as Exhibit C), were largely unresponsive.  In the process of investigating the representations made by the Priddis Defendants in those two brief items of correspondence, it became clear that the facts demonstrated that the Priddis Defendants were not being truthful when they represented that they had "…exited the Karaoke business;" indeed, they were continuing to infringe Plaintiffs' copyrights unabated.  (Stacey Decl., ¶ 4) Priddis Defendants' infringing recordings of Plaintiffs' copyrights were purchased via an interactive internet website from Nashville, Tennessee, on or about March 14, 2007.  (Gibbey Decl., ¶ 3, [Stacey Decl., Ex. D] Exhibit A thereto).

Mitchell
Silberberg &
Knupp LLP

1481087.1

4                              CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   informed Mediostream that it would be necessary to institute suit against it to establish some

2   control over the infringements by the Priddis Defendants and seek injunctive relief either by

3   agreement or on a contested basis. (Stacey Declaration, ¶ 5, Exhibit C thereto).

4          In order to avoid any dispute concerning service, the Warner Publishers' counsel inquired

5   of Mediostream's counsel whether or not he would accept service of the Complaint.  In response,

6   Mediostream's counsel stated that he would "check with his client."  Stacey Decl., ¶ 5.  Rather

7   than doing so, however, on April 17, 2007, Mediostream prepared and filed this action against

8   Warner/Chappell Music, Inc. ("WCM") and Priddis.  In its Complaint, Mediostream did not allege

9   that it actually possessed (or possesses) any lawful rights in the copyrights or, for that matter, any

10   licenses for the use of the Warner Publishers' copyrights.  Nor did it seek a declaration with

11   respect to its *future* course of dealings.  Rather, Mediostream merely sought a "declaration from

12   this Court [that] to the extent that plaintiff has infringed on any rights of Warner (which plaintiff

13   denies), that said infringement was innocent and in ignorance of Warner's rights and was the

14   direct result of either misinformation provided by Priddis as to Priddis' rights."  Complaint, ¶ 8.

15   Mediostream also sought "indemnification" from Priddis, in the event liability was imposed on it

16   for its past acts of infringement (a claim that makes little sense, and cannot stand on its own,

17   because no affirmative infringement claim had been made against Mediostream in this action).

18          Mediostream's initial Complaint erroneously sued only WCM (and not any other Warner

19   Publisher), apparently overlooking that WCM does not own any of the copyrights that

20   Mediostream was alleged to have infringed.  On May 17, 2007 – one week **after** the Warner

21   Publishers filed the Nashville Action – Mediostream amended its Complaint to add the plaintiffs

22   in the Nashville Action (*i.e.*, the remaining Warner Publishers).

23         **The Nashville Action.**  On May 8, 2007 – approximately three weeks after this lawsuit

24   was filed, the Warner Publishers filed the Nashville Action.  Although this action named only

25   WCM as a defendant, the Nashville Action was brought on behalf of 10 Warner Publishers.

26   Additionally, the Nashville Action named not only Mediostream and Priddis as Defendants, but

27   also related entities Prosound Karaoke Limited  (a United Kingdom Corporation owned by

28   Priddis), Richard L. Priddis individually, DJ Miller Music Distributors, Inc. d/b/a "Prosing" and

Mitchell
Silberberg &
Knupp LLP

1481087.1

5           CASE NO. C 07 2127

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   its owner, Dale S. Miller.  (See, *e.g.*, Nashville Complaint, ¶¶ 27-29.)  The complaint in the

2   Nashville Action seeks injunctive relief against all of the Defendants as well as the alternative

3   damages options pursuant to Section 505 of the Copyright Act and attorneys' fees and costs.  Id.

4   The Nashville Action is well underway (see Stacey Decl., Ex. G [docket sheet]):

5   ● On July 2, 2007, the Warner Publishers filed a Motion for a Preliminary Injunction

6   against all of the defendants therein, including Mediostream and Priddis.

7   ● On July 9, 2007, after the parties submitted their case management statements, a

8   Case Management Conference was held.  At the Case Management Conference, the Court *denied*

9   the Priddis Defendants' request to extend time for filing Rule 26(a) Disclosures from 30 days to

10   180 days.  Accordingly, the parties' initial disclosures are to be exchanged on August 8, 2007.

11   ● On July 9, 2007, the Warner Publishers and the Miller Defendants filed an agreed

12   Order for Preliminary Injunction and Joint Motion for Entry of Preliminary Injunction and

13   Mediation.

14   ● On July 13, 2007, the Agreed Order for a Preliminary Injunction was entered, and

15   the Court ordered the parties thereto to mediation. (Stacey Decl, ¶ 11, Exhibit F thereto.)

16   ● On July 17, Priddis filed its response to the Warner Publishers' Motion for

17   Preliminary Injunction.

18   ● On July 26, 2007, Mediostream filed an Answer to the Complaint.

19   ● On July 27, 2007, Mediostream agreed to join in the formal Mediation with the

20   Miller Defendants, to be completed in Nashville on or before September 14, 2007. (Stacey Decl,

21   ¶ 12.)

22

23   **II.   THE ACTION SHOULD BE DISMISSED AS AN ANTICIPATORY LAWSUIT OR**
24   **OTHERWISE IN DEFERENCE TO THE WARNER PUBLISHERS' PARALLEL**
     **TENNESSEE ACTION.**

25   The United States Supreme Court has held that "the manufacturer who is charged with

26   infringing…cannot stretch the Federal Declaratory Judgments Act to give him a paramount right

27   to choose the forum for trying out questions of infringement and validity." Kerotest Mfg. Co. vs.

28   C-O-Two Fire Equip. Co., 342 U.S. 180, 185. (1952) (reversing preliminary injunction restraining

Mitchell
Silberberg &
Knupp LLP

1481087.1

6                                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  a patent owners' later filed suit for infringement).  This principle has been extended to preclude

2  the anticipatory filing of purported declaratory judgment actions where, as here, the *only* asserted

3  basis is the threat of suit by an injured party.  See Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712

4  (7th Cir. 2002)  ("[The] Act is not a tactical device whereby a party who would be a defendant in a

5  coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse."

6  (internal quotation marks omitted); See also NGS Am., Inc. v. Jefferson, 218 F.3d 519, 523 (6th

7  Cir.2000) ("[A] rule permitting [this sort of declaratory] action could frustrate a plaintiff's choice

8  of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning

9  waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process

10  to harass an opponent in litigation…."); BASF Corp. v. Symington, 50 F.3d 555, 558-59 (8th Cir.

11  1995) ("declaratory actions founded exclusively on a defense to a state law claim should be

12  dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to

13  choose the forum and time of suit";  "the natural plaintiff's choice of forum and law will be

14  disturbed only in exceptional circumstances"); Tempco Elec. Heater Corp. v. Omega Engineering,

15  Inc., 819 F.2d 746, 750 (7th Cir. 1987) ("[T]he federal declaratory judgment is not a prize to the

16  winner of the race to the courthouse." (internal quotation marks omitted).  As the Sixth Circuit has

17  noted:

18          "The "useful purpose" served by the declaratory judgment action is
            the clarification of legal duties for the *future*, rather than the past
19          harm a coercive tort action is aimed at redressing…  [c]ourts take a
            dim view of declaratory Plaintiffs who file their suits mere days or
20          weeks before the coercive suits filed by a "natural Plaintiff" and
            who seem to have done so for the purpose of acquiring a favorable
21          forum.…[n]ormally when a putative tortfeasor sues an injured party
            for declaration of non-liability, courts will decline to hear the action
22          in favor of a subsequently-filed coercive action by the "natural
            Plaintiff."

23

24  AmSouth Bank v. Dale, 386 F.3d 763, 786-88 (6th Cir. 2004).  See also UAW v. Dana Corp., No.

25  3:99CV7603, 1999 WL 33237054, *5-*6 (N.D. Ohio, Dec. 6, 1999) (where declaratory plaintiff

26  filed suit in order to "preempt the choice of forum that otherwise would be for the union to make,"

27  declaratory judgment inappropriate;  noting "a presumption that a first filed declaratory judgment

28  action should be dismissed or stayed in favor of the substantive suit," and that at the least, "the

Mitchell
Silberberg &
Knupp LLP

1481087.1

1    declaratory judgment plaintiff should have the burden or showing persuasive cause why its suit

2    should not be enjoined").

3         This is precisely the case here.  This lawsuit does not seek to redress **any** substantive harm

4    to Mediostream, but rather merely seeks a declaratory judgment either that it did not infringe the

5    Warner Publishers' copyrights or that its infringement was "innocent" and the result of

6    "misinformation" provided by Priddis that the music it was using, advertising and selling on its

7    website was licensed.  Accordingly, this lawsuit is merely the "mirror-image" of the Nashville

8    Action, or, at most, asserts affirmative defenses that can (and, indeed, have been) raised in the

9    Nashville Action.  See Int'l Ass'n of Entrepreneurs v. Angoff, 58 F.3d 1266, 1270 (8th Cir. 1995)

10   ("[T]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative

11   defense which can be asserted in a pending state action.")  It was filed solely to wrest the choice of

12   venue from the Warner Publishers.

13        It is well-established that this Court, in the exercise of its discretion, may dispense with the

14   "first to file" rule and dismiss an anticipatory or duplicative declaratory relief action "for reasons

15   of equity."  Z-Line Designs, Inc. v. Bell'O International LLC, 218 F.R.D. 663, 665 (N.D. Cal.

16   2003).  See also Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 664 (5th Cir. 1967) ("Wise

17   judicial administration, giving regard to conservation of judicial resources and comprehensive

18   disposition of litigation, does not counsel rigid mechanical solution of such problems.  The factors

19   relevant to wise administration are equitable in nature.")  As the Court for the Central District of

20   California explained:

21            "The real question for the court is not which action was commenced
              first but which will most fully serve the needs and convenience of
22            the parties and provide a comprehensive solution of the general
              conflict."
23

24   Gribin v. Hammer Galleries, 793 F. Supp. 233, 235 (C.D. Cal. 1992) (quoting 10A C. Wright &

25   A. Miller, Federal Practice & Procedure § 2758 at 637-38 (2d ed. 1983 & Supp. 1991)).

26        Among the most important "equitable" considerations that justify dismissal of a "first-

27   filed" declaratory relief action is where that lawsuit is filed in anticipation of an imminent coercive

28   action and in an effort to "forum-shop."  Factors, Etc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.

Mitchell
Silberberg &
Knupp LLP

1481087.1

1  1989) (exception to "first-filed" rule warranted where the "suit for declaratory judgment was filed

2  in apparent anticipation of [the later-filed coercive] suit"); E.E.O.C. v. University of Tennessee,

3  850 F.2d 969, 972 (3d Cir. 1988) ("first-filed" rule should not be applied in circumstances where

4  there has been "inequitable conduct, bad faith, or forum shopping"); Z-Line Designs, 218 F.R.D.

5  at 665 ("Circumstances under which the first to file rule will not be applied include bad faith,

6  anticipatory suit, and forum shopping."). See also Charles Schwab & Co., Inc. v. Duffy, Case No.

7  C98-03612, 1998 WL 879659 at *1 (N.D. Cal. Dec. 8, 1998) ("In this case, it is appropriate to

8  depart from the first-to-file rule and dismiss the action because the instant action appears to be an

9  anticipatory suit.") "A suit is anticipatory when the plaintiff filed upon receipt of specific,

10  concrete indications that a suit by defendant was imminent." Z-Line Designs, 218 F.R.D. at 665.

11  See also NSI Corp. v. Showco, Inc., 843 F. Supp. 642, 645 (D. Or. 1994) ("first-filed" rule does

12  not apply where "the party seeking declaratory judgment unfairly took advantage of the other in a

13  race to the courthouse").

14       There are important public policy considerations underlying this rule.  "The federal

15  declaratory judgment is not a prize to the winner of a race to the courthouses," Factors, 579 F.2d at

16  218, and should not be used as an "instrument of procedural fencing." Mailer v. Zolotow, 380 F.

17  Supp. 894 (S.D.N.Y. 1974).  Further, permitting an anticipatory lawsuit to proceed would "reward

18  -- and indeed abet -- conduct that is inconsistent with the sound policy of promoting extrajudicial

19  dispute resolution and conservation of judicial resources." Davox Corp. v. Digital Sys. Int'l, Inc.,

20  846 F. Supp. 144, 147 (D. Mass. 1993).  As one court explained:

21              As federal court calendars become increasingly burdened, attorneys
            should exercise a correspondingly increased responsibility to
22          attempt to resolve disputes without using limited judicial resources
            to decide issues which might, by reasonable discussions between
23          reasonable people, be settled out of court. Potential plaintiffs should
            be encouraged to attempt settlement discussions (in good faith and
24          with dispatch) prior to filing lawsuits without fear that the defendant
            will be permitted to take advantage of the opportunity to instigate
25          litigation in a district of its own choosing before the plaintiff files a
            complaint.

26

27  Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (S.D.N.Y. 1977). See also

28  Charles Schwab at * 1 ("Applying the first-to-file rule [in the case of an anticipatory lawsuit]

Mitchell
Silberberg &
Knupp LLP

1481087.1

1   would thwart settlement negotiations, as intellectual property holders would feel compelled to file

2   suit rather than communicate with an alleged infringer.")  This policy is so important that a lawsuit

3   precipitated by a demand letter will generally be considered anticipatory and thus dismissed.

4   Hanson PLC v. Metro-Goldwyn-Mayer, Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996) ("Where the

5   first-filed case is a declaratory judgment action precipitated by a demand letter and filed in

6   anticipation of the later action, the second-filed action will be permitted to go forward in plaintiff's

7   chosen forum."); Chicago Ins. Co. v. Holzer, Case No. 00 Civ. 1062, 2000 WL 777907, *2

8   (S.D.N.Y. June 16, 2000) (filing of declaratory judgment action triggered by notice letter is a

9   "persuasive indicator of anticipatory conduct.")

10          Review of the Complaint (and Amended Complaint) alone makes clear that this action was

11  filed not to seek redress for any substantive rights, but simply to secure Mediostream's choice of

12  forum.  That aside, the circumstances surrounding the filing of this lawsuit provide indisputable

13  evidence that this action was filed in anticipation of the Nashville Action and specifically was

14  triggered by the Warner Publishers' cease and desist letter and their subsequent inquiry regarding

15  service of a complaint.  Tellingly, this lawsuit was filed just days after the Warner Publishers'

16  counsel asked Mediostream's counsel whether he would accept service of the Complaint.  Instead

17  of responding to that inquiry, Mediostream's counsel stated that he needed to "check with [his]

18  client" to determine whether he had such authority and used that extra time to prepare a complaint

19  and file this action.  Indeed, the Complaint was prepared so hastily that it omitted the key

20  defendants, and thus had to be Amended several weeks later (before it was served).  Courts

21  routinely have dismissed cases where the plaintiff employed similar delay tactics to file a

22  preemptive complaint.  See, e.g., Z-Line, 218 F.R.D. at 664 (plaintiff requested multiple

23  extensions to respond to defendant's cease-and-desist letter, and then filed its lawsuit just before

24  the expiration of the new deadline); Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602

25  (5th Cir. 1983) (plaintiff commenced suit while settlement discussions were pending and just prior

26  to the expiration of the parties' tolling agreement); Muller v. Walt Disney Corp., 822 F. Supp.

27  1033 (S.D.N.Y. 1993) (the day before the deadline arrived, defendant requested more time to

Mitchell
Silberberg &
Knupp LLP

28

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   respond, engaged in a series of telephone calls and therefore "used the prospect of settlement to

2   delay [the] filing of suit" in order to file its action).[5]

3        Moreover, and equally important, for this Court to retain this action plainly would be

4   contrary to interests of convenience and efficient judicial administration.  All of Mediostream's

5   claims and arguments (including its claims against Priddis, if it so elects) can be (and in fact have

6   been) asserted in the Nashville Action.  This action will not address or resolve any issues that will

7   not adequately be addressed by the Tennessee Action.  See Great Am. Ins.v. Houston General Ins.

8   Co., 735 F. Supp. 581, 586 (S.D. N.Y. 1990) ("[I]t is not appropriate for the Court to entertain the

9   instant declaratory judgment action.  There is a pending coercive action in the United States

10  District Court for the Northern District of Texas that will provide plaintiff in the instant action

11  with every opportunity to protect the rights that it sought adjudicated in the instant action.").

12  Moreover, the Nashville Action has progressed much further than this action, as the Nashville

13  Court has already issued a preliminary injunction, held a case management conference, ordered

14  the parties to conduct a mediation, and is now considering a motion for a preliminary injunction.

15  There simply is no reason why this case should not be litigated in Tennessee, where it already is

16  pending in its proper form.  Lonza, Inc. v. Rohm & Haas, Inc., 951 F. Supp. 46, 50 (S.D.N.Y.

17  1997) (declining to entertain declaratory relief action because "there simply is no reason why the

18  patent issues in dispute should be litigated in two different fora.").

19

20  **III.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION
         TO THE MIDDLE DISTRICT OF TENNESSEE.**

21

22       In the event that the Court declines to dismiss (or transfer) this action as an "anticipatory"

23  lawsuit, the Court alternatively should transfer the action to the Middle District of Tennessee

24  pursuant to 28 U.S.C. § 1404(a), which permits transfer to any other district or division where the

25

26  _____

    [5] That Mediostream's lawsuit contains an affirmative claims for relief against Priddis does not
27  change the above analysis.  None of those affirmative claims are against the Warner Publishers.
    Further, the "idemnification" claim against Priddis is purely derivative of the Warner Publishers'
    copyright claims, and arise out of the very same conduct that gives rise to the copyright claims
28  that form the basis of the Tennessee action.

Mitchell
Silberberg &
Knupp LLP

1481087.1

11                              CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  suit might have been brought "[f]or the convenience of parties and witnesses" or "in the interest of

2  justice."  Under section 1404(a), a district court has "broad discretion" to transfer a case.  <u>See</u>

3  <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir.2000).  When evaluating a section

4  1404(a) motion, the court should make a "flexible and individualized analysis" and "weigh in the

5  balance a number of case-specific factors" to determine whether the proposed transferee court

6  would be a more convenient forum for litigation.  <u>Stewart Organization Inc. v. Ricoh Corp.</u>, 487

7  U.S. 22, 29 (1988).  These factors include "private interest factors" effecting the convenience of

8  the litigants and "public interest factors" effecting the convenience of the forum.  <u>Piper Aircraft</u>

9  <u>Co., v. Reyno</u>, 454 U.S. 235, 241 (1981).

10          Further, where, as here, the action is anticipatory and predicated solely on declaratory

11  relief claims, the burden is on the ***plaintiff*** – not the defendant – to prove that the convenience

12  factors favor retention of the action in its chosen forum.  <u>See</u> <u>BASF Corp. v. Symington</u>, 50 F.3d

13  555, 558 (8th Cir. 1995) ("[T]he ***natural plaintiff's*** choice of forum and law will be disturbed

14  only in exceptional circumstances."); <u>Lawrence County, South Dakota v. State of South Dakota</u>,

15  668 F.2d 27, 30 (D. Mass 1996) ("[W]hen a party seeks access to federal court in a declaratory

16  judgment action, the court must examine the realistic position of the parties.  The court may

17  realign the parties, if necessary.")

18          Plainly, this action "might have been brought" in the Middle District of Tennessee.  All of

19  the Nashville Defendants including the Plaintiff herein, Mediostream, are doing business in the

20  Middle District of Tennessee and are subject to personal jurisdiction there; thus they "may be

21  found" in that District for purposes of 28 U.S.C. §1400(a).  <u>Columbia Pictures Television v.</u>

22  <u>Krypton Broadcasting of Birmingham</u>, 106 F.3d 284, 289 (9th Cir. 1997).  Likewise, the existence

23  of the related Tennessee action, as well as the various other public and private interests in justice,

24  expediency and convenience, collectively mandate transfer of this action to the Middle District of

25  Tennessee.

26

27

28

Mitchell
Silberberg &
Knupp LLP

1481087.1

12          CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

A.    <u>The Related Tennessee Action Alone Mandates Transfer of This Action.</u>

The existence of the parallel and related Nashville Action alone justifies transfer. "[R]elated litigation pending in the proposed transferee court is a factor that weighs heavily in favor of transfer." <u>Baird v. California Facility Ass'n</u>, Case No. C-00-0628-0628-VRW, 2000 WL 516378 (N.D. Cal. 2000). Indeed, courts have held that the existence of related litigation is "[t]he *most significant* factor favoring transfer." <u>Keppen v. Burlington N. R.R.,</u> 749 F.Supp. 181, 184 (N.D. Ill. 1990) (emphasis added). This is because "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26 (1959). See also <u>Martin-Trigona v. Meister</u>, 668 F. Supp. 1, 3 (D.D.C. 1987) ("The interests of justice are better served when a case is transferred to the district court where related actions are pending."); <u>Capital Venture Int'l v. Network Commerce, Inc.</u>, Case No. 01-Civ. 4390 (JSM), 2002 WL 417246 (S.D.N.Y. March 15, 2002) (transferring case to Washington, despite a New York forum selection clause, where related actions were pending in Washington). As one court explained:

> There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided….Accordingly, cases often have cited the pendency of related actions in another court as strongly supporting the transfer of an action to that court.

<u>Savin v. CSX Corp.</u>, 657 F. Supp. 1210, 1214 (S.D.N.Y. 1997).

This is precisely the case here. Both this action and the Nashville Action involve overlapping parties, but more significantly, the Nashville Action involves additional necessary parties, against whom an injunction has already entered, who are not parties to this action. And not only do the cases, parties, and copyrights overlap, but the Nashville Action has proceeded much further than this case. A motion for preliminary injunction has been filed. A case management conference has taken place. Mediostream has filed an Answer and a case management statement, and presumably is preparing its initial disclosures. (Indeed, the Middle District of Tennessee, after conducting the Case Management Conference on July 9, 2007, *denied*

1   the Priddis' defendants request for additional time to serve its initial disclosures). Two of the

2   Defendants have entered into an Agreed Preliminary Injunction. Stacey Decl., ¶ 11 & Ex. D.

3   These same Defendants have agreed to submit the issues to formal Mediation in Nashville to be

4   completed prior to September 15, 2007. And while Mediostream has not entered into an agreed

5   order for mediation in the Nashville case, its attorneys have stated that Mediostream will

6   participate in the same Mediation with the other negotiating defendants and *will, in all probability,*

7   *enter into a stipulated injunction*. Id., ¶ 12. Accordingly, if the case is not transferred, this Court

8   will be required to issue rulings and consider matters that already have been considered (or are

9   being considered) in the Nashville Action, while the parties will be required to engage in

10  duplicative discovery proceedings. The interests of judicial economy plainly favor transfer.

11

12      **B.    Mediostream Cannot Meet Its Burden Of Proving That Any Other Public or
               Private "Convenience" Factors Justify Retention Of This Action; To The**
13             **Contrary, All Favor Transfer To The Middle District Of Tennessee.**

14          Examination of the remaining transfer factors also reveals that each of them either is

15  neutral or favors transfer to the Eastern District of Tennessee.[6] This is because, as a general

16  matter, critical events that give rise to this action took place in the Eastern District of Tennessee,

17  where the Warner Publishers' copyrights were infringed by interactive internet solicitations,

18  advertising, sales and shipment of infringing recordings into Tennessee; as a result, the Warner

19  Publishers were injured by the offending transactions in Tennessee. Mediostream cannot meet its

20  burden of proving its entitlement to have this action remain in California and deprive the Warner

21  Publishers of their choice of forum.

22

23

24  [6] These factors include: (1) the location where the relevant agreements were negotiated and
    executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of
25  forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's
    cause of action in the chosen forum, (6) the differences in the cost of litigation in the two forums,
26  (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses,
    (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the
27  relevant public policy of the forum state. Jones. 211 F.3d at 498-99. With respect to the First and
    Ninth factors, there is no "agreement" at issue between the Warner Publishers and any of the
28  Nashville Defendants.

Mitchell
Silberberg &
Knupp LLP

1481087.1

1    **Place of Injury.**  Initially, transfer is appropriate because the ***Warner Publishers*** – not

2    Mediostream – are the injured parties, since it was the infringement of their copyrights by

3    Mediostream that precipitated this litigation.  This injury occurred in Tennessee, where three of

4    the Warner Publishers are headquartered.  Endless Pools, Inc. v. Wave Tec Pools, Inc., 362

5    F.Supp.2d 578, 586 (E.D. Pa. 2005) (trademark holder's infringement damages "occurred and

6    continues to occur [where the trademark owner was located]".)  This weighing heavily in favor of

7    transfer of the action to Tennessee, because copyright holders are entitled to litigate infringement

8    claims in their choice of forum.  See, *e.g.*, Miss America, 945 F.2d at 543 (Section 501 of the

9    Copyright Act grants "the copyright holder its choice of forum and express[es] a policy of giving

10   the holder an advantage over the alleged infringer").  Further, Tennessee has an interest in

11   redressing injuries to its citizens.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)

12   (states have a "manifest interest" in providing residents with a convenient forum for redressing

13   injuries inflicted by out-of-state actors).  Mediostream's "Declaratory Judgment" claim is no more

14   than a defense to the Warner Publishers' affirmative infringement claim, and should be accorded

15   little weight (and, indeed, should be pursued where the infringement case is pending).  BASF, 50

16   F.3d at 559 ("It is our view that where a declaratory plaintiff raises chiefly an affirmative defense,

17   and it appears that granting relief could effectively deny an allegedly injured party its otherwise

18   legitimate choice of the forum and time for suit, no declaratory judgment should issue.")[7]

19   **Familiarity With The Governing Law.**  The Tennessee Court is equally equipped to

20   adjudicate the legal issues presented in this action.  California law will not provide the "rules of

21   decision" for Mediostream's claims.  In re Eastern District Repetitive Stress Injury Litigation, 850

22   F. Supp. 188, 196 (S.D.N.Y. 1994) ("Federal courts have generally favored adjudication of a

23   controversy by the Court which sits in the state whose law will provide the rules of decision.")

24   Rather, they will be entirely governed by federal copyright law (*i.e.*, its claims for "declaratory"

25   relief actually seek an adjudication of the Warner Publishers' claims for substantive copyright

26

27   _____

[7] If the action ultimately is litigated here, the Warner Publishers' copyright infringement claims
will be required to be asserted as counterclaims and the additional Nashville Defendants will have
28   to be joined as third parties.

Mitchell
Silberberg &
Knupp LLP

1481087.1

15                                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   infringement in the *guise* of a purported claim for declaratory relief), with which the District Court

2   in Nashville is very familiar.  As for Mediostream's "indemnification" claim against Priddis (to

3   the extent that joint tortfeasors subject to *strict liability* copyright infringement claims can

4   conceivably seek indemnification from one another), such an anomalous claim is derivative of the

5   copyright infringement claims and thus should be decided in the Middle District of Tennessee

6   simultaneously with the copyright infringement claims.[8]

7        **Cost of Litigation**.  As set forth above, interests of efficiency and judicial economy favor

8   litigation of this action in the Middle District of Tennessee.  That court already is familiar with

9   this action, has reviewed many of the relevant documents, entered an injunction concerning many

10  of the facts at issue here, conducted a Case Management Conference, refused to stay Rule 26(a)

11  disclosures and ordered Mediation for the Warner Publishers and two of the Nashville Defendants.

12  Smithkline Corp. v. Sterling Drug, Inc., 406 F.Supp. 52, 56 (D. Del. 1975).  If the Court declines

13  to transfer this action, the result would be overlapping and duplicative litigation, resulting in a

14  waste of time and resources.  Id.

15       **Ease of Access To Sources Of Proof.**  At this point, many if not all of the Warner

16  Publishers' documents and witnesses (certainly the venue/jurisdiction witnesses) related to this

17  dispute are located in Nashville, Tennessee, where the headquarters for three of the Warner

18  Publishers are located.  To the extent that other witnesses are utilized, they stand ready and willing

19  to appear in Nashville, which is the Warner Publishers' choice of forum.  Isenberg Decl., ¶¶4-5.

20  That Mediostream might have some relevant documents or witnesses in California cannot alone

21  tip the balance in favor of litigating here.  Board of Trustees v. Elite Erectors, Inc., 212 F.3d 1031,

22  1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the

23  abundance of law firms with nationwide practices, make it easy these days for cases to be litigated

24  with little extra burden in any of the major metropolitan areas."); Mohamed v. Mazda Motor

25  Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) (location of documents has "been given

26  decreasing emphasis due to advances in copying technology and information storage").

---

[8]  Alternatively, the Court may transfer Mediostream's claims against the Warner Publishers and
permit Mediostream and Priddis to determine the venue for their claims against each other.

Mitchell
Silberberg &
Knupp LLP

1481087.1

28

16                                        CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    **Availability of Process.**  Mediostream not only already has accepted service of process in

2    the Nashville Action; it has ***answered*** the Complaint.  Stacey Decl., Ex. G.  Accordingly, all of

3    Mediostream's witnesses can be compelled to testify in Tennessee.  See <u>Gardipee v. Petroleum</u>

4    <u>Helicopters, Inc.</u>, 49 F. Supp. 2d 929, 930 & n.5 (E.D. Tex. 1999) ("Defendants' prospective

5    [employee] witnesses…while not residing within one hundred miles of this courthouse, are

6    nevertheless subject to the control of the Defendant, and can effectively be brought here without

7    compulsory process.")

8    **Contacts With Tennessee.**  None of the Warner Publishers has any offices, employees,

9    witnesses, records facilities or bank accounts which make any aspect of litigating in the Northern

10   District convenient.  Isenberg Decl., ¶ 4.  On the other hand, three of the Warner Publishers herein

11   who are also Plaintiffs in the Nashville Action have their principal offices in Nashville (namely,

12   Word Music LLC, Dayspring Music, LLC, and Wordspring Music, LLC).  <u>Id.</u>, ¶ 5.

13   Mediostream and the other Nashville Defendants have continuous contacts with the State

14   of Tennessee, including the advertising, solicitation, subscription, sale and shipment of their

15   infringing products there.  <u>See</u> Stacey Decl., ¶ 4; Ex.D thereto.  Further, this action arises out of

16   Mediostream's contacts with Tennessee – namely, its infringement of the Warner Publishers'

17   copyrights.  <u>See</u> <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 243 F. Supp. 2d 1073,

18   1082 (C.D. Cal. 2003).[9]

19   <u>**Conclusion**</u>

20   For the foregoing reasons, the Court should dismiss, transfer or stay this action in

21   deference to the pending Nashville Action.

22

23

24   [9]  In the event the Court elects not to dismiss or transfer this action, it alternatively should stay this action pending the resolution of the Tennessee actions.  <u>See</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S.

25   277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent

26   upon that court to proceed to the merits before staying or dismissing the action. [Thus, a] district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a

27   declaratory judgment before trial"); <u>Commercial Union Insur. Co. v. Cannelton Indus., Inc.</u>, 828 F. Supp. 504 (W.D. Mich. 1993) (granting stay of declaratory judgment action pending resolution of

28   subsequent action in state court that included two additional parties.)

Mitchell
Silberberg &
Knupp LLP

1481087.1

17                                    CASE NO. C 07 2127
NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   DATED: August 3, 2007                    MARC E. MAYER
                                             MITCHELL SILBERBERG & KNUPP LLP
2

3

4                                            By: /s/ Marc E. Mayer
                                                 Marc E. Mayer
5                                                Attorneys for the Warner Publishers

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1481087.1

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT